## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMANDA WARD,** | : | **Civil No.  1:20-CV-1691** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

I.    **Factual Background**

Amanda Ward applied for disability and supplemental security income benefits in May of 2018, alleging that she had been disabled since May 1, 2018 due to various emotional disorders, including panic, depression, anxiety and agoraphobia, a fear of strangers, groups, and large gatherings. Ward was approximately 38 years old at the time of the alleged onset of her disability, making her a "younger" individual whose age would generally not affect her ability to adjust to other work. (Tr. 87). 20 C.F.R. § 416.963(c). While Ward reported this

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

agoraphobia as one of her disabling condition, the administrative record in this case was replete with statements by Ward regarding her prior employment history that cast doubts upon the severity of these emotional impairments. Specifically, Ward disclosed that she had long worked as a hostess, server, and bartender, employment which routinely entailed close contact with a large number of strangers. (Tr. 170, 178, 207-13).

Citing her fear of public gatherings, Ward sought to appear telephonically at her hearing before an Administrative Law Judge (ALJ). However, the ALJ denied this request, noting that:

> Claimant's representative requested the claimant appear at the hearing by telephone, arguing the claimant "suffers from extreme agoraphobia and has an extreme fear of traveling" (13E/1-2). The claimant's representative insists the claimant "cannot go to new places that are outside of her comfort zone" (13E/1) and "was only able to drive … 15 minutes from her residence" (13E/2). At the hearing, the claimant's representative objected to not allowing the claimant appear at the hearing telephonically (Hearing Testimony). Near the date of the hearing a July 2019 treatment note states the claimant "has been leaving her house daily and has been [g]oing to different dollar stores and department stores" (13E/9; 8F/7), and implies she has been working as she would go somewhere "after her work shift" (13E/9; 8F/7). A subsequent July 2019 progress note indicates the claimant went to a fast food restaurant with her daughter and "left not because of high anxiety but the air conditioning was not working, and they were uncomfortable" (13E/7; 8F/5). These treatment notes near the date of the hearing indicate the claimant has the capacity to travel places. Accordingly, the undersigned denied the claimant's representative request to allow the claimant to appear at the hearing telephonically and overrules the objection of the claimant's representative.

2

(Tr. 15).

Ward's hearing was then scheduled for August 1, 2019. (Tr. 29-39). Having been denied the option of a telephonic hearing, Ward failed to appear for this in-person proceeding. Accordingly, the ALJ received into evidence the relatively meager medical and vocational records that had been amassed in Ward's case, took testimony from a Vocational Expert, and entertained legal argument by Ward's counsel. (Id.)

In the absence of any testimony by Ward describing the severity of her impairments, the ALJ was called upon to examine treatment records in an effort to determine whether her mental health conditions were disabling. These treatment records consisted of several reports of emergency room visits by Ward in the summer of 2018 where she reported anxiety attacks. (Tr. 273-76, 287-88). In addition, a mental health care provider, T.W. Ponessa, reported providing out-patient care to Ward for depression, anxiety, and agoraphobia from April through November 2018. (Tr. 296-343). The treatment notes of these clinical encounters confirmed the diagnosis that Ward suffered from depression, anxiety, and agoraphobia, noting that she presented as anxious or slightly anxious. However, the treatment notes also indicated that Ward was logical, goal oriented, displayed good eye contact and normal speech. (Id.) Ward also appeared to have received out-patient mental health

3

treatment at Wellspan-Philhaven from January of 2019 through July of 2019. (Tr. 246-56, 344-85). These treatment notes also identified Ward as suffering from depression, anxiety, and agoraphobia, but noted instances in which she described a reduction in her symptoms and an increased ability to interact with others in social settings. (Id.)

Notably, none of these treating sources opined that Ward's mental health conditions were disabling. Instead, the only medical opinion on record in this case was the opinion of a state agency expert, Dr. Hite, who concluded that Ward was not disabled and suffered from only moderate impairment in her ability to interact with others. (Tr. 57-60).

It was against the backdrop of this medical record that the ALJ issued a decision on September 9, 2019 denying Ward's application for benefits. (Doc. 12-23). In that decision, the ALJ first concluded that Ward met the insured requirements of the Act and had not engaged in gainful activity since May of 2018. (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Ward suffered from the following severe impairments: depression, anxiety, and panic disorders. (Tr. 18). At Step 3, the ALJ determined that Ward did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18-19).

4

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity (RFC), considering Ward's limitations from her impairments, which stated that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels and she can perform work limited to simple, routine, repetitive tasks. She cannot interact with the public.

(Tr. 19-20).

In reaching this RFC determination the ALJ carefully weighed the meager clinical and opinion medical evidence on the record, noting its equivocal quality. (Tr. 20-21). The ALJ also considered Ward's reported activities of daily living, finding that:

> In April 2019, the claimant's psychiatrist noted the claimant's agoraphobia and anxiety were improving (7F/7). In June 2019, the claimant's counselor reported the claimant "was able to go grocery shopping and spend over an hour in the store" (13E/13; 8F/11). A July 2019 treatment notes state the claimant "has been leaving her house daily and has been [g]oing to different dollar stores and department stores," implies she has been working as she would go somewhere "after her work shift" (13E/9; 8F/7). These notes also state the claimant reports the claimant went to a fast food restaurant with her daughter and "left not because of high anxiety but the air conditioning was not working, and they were uncomfortable" (13E/7; 8F/5). The record lacks evidence the claimant received recent inpatient mental health treatment or referral to crisis intervention. The claimant's activities of daily living are inconsistent with her allegations. She states she helps care for two of her children and can prepare meals daily, do laundry, clean, do dishes, drive, and manage money. The claimant notes she watches television, plays with her daughter, and texts and talks on the phone with others. She indicates she finishes what she starts, can follow instructions, and gets along with authority figures well (6E). Therefore,

5

the undersigned finds the claimant can perform work limited to simple, routine, repetitive tasks and cannot interact with the public.

(Tr. 21).

Finally, in the absence of any medical opinion evidence supporting Ward's claim of disability, the ALJ evaluated the state agency expert opinion. According to the ALJ's decision:

> The record includes a September 2018 statement from a state agency psychological consultant, Mark Hite, EdD. Dr. Hite stated the claimant has moderate limitations understanding, remembering, or applying information; moderate limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and mild limitations adapting or managing herself (1A/5-6; 2A/5-6). This opinion is supported by the longitudinal treatment notes, which generally show the claimant the claimant is fully oriented, alert, and cooperative with good eye contact, normal speech, fair grooming, logical and goal-directed thought processes, good attention, good concentration, logical thought content, fair cognition, fair memory, good recent memory, good remote memory, intact long-term memory, normal behavior, appropriate language, appropriate fund of knowledge, fair insight, and fair judgment (13E; 3F; 4F; 5F; 6F; 7F; 8F). This statement is also consistent with the claimant's lack of recent inpatient mental health treatment or referral to crisis intervention. Further, Dr. Hite is a highly qualified expert who had the opportunity to review the claimant's records. Accordingly, the undersigned finds Dr. Hite's statements is persuasive.

(Tr. 21).

Based upon this evaluation of the medical record the ALJ concluded that Ward could not return to her past employment but found that there were a substantial number of jobs in the national economy that she could perform. (Tr. 22-23).

6

Accordingly, the ALJ concluded that Ward did not meet the stringent standard for disability set by the Act and denied this disability claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Ward contends that the ALJ's decision is not based on substantial evidence required under 42 U.S.C. § 405(g) because: (1) the ALJ erred in denying Ward leave to participate in her disability hearing by telephone; (2) the ALJ erred in fashioning an RFC that did not adequately consider her severe impairments of anxiety, depression, and panic disorders; and (3) the ALJ failed to adequately consider her agoraphobia in making this disability determination. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, the Commissioner's final decision is affirmed.

## II.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

7

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

10

**B.**     <u>**Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

12

assessment from a physician regarding the functional abilities of the claimant."
Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)
(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa.
Mar. 4, 2013)). In other instances, it has been held that: "There is no legal
requirement that a physician have made the particular findings that an ALJ adopts
in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11
(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any
credible medical opinion supporting a claimant's allegations of disability that "the
proposition that an ALJ must always base his RFC on a medical opinion from a
physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D.
Pa. 2015).

These seemingly discordant legal propositions can be reconciled by
evaluation of the factual context of these decisions. Those cases which emphasize
the importance of medical opinion support for an RFC assessment typically arise in
the factual setting where a well-supported medical source has opined regarding
limitations which would support a disability claim, but an ALJ has rejected the
medical opinion which supported a disability determination based upon a lay
assessment of other evidence. In this setting, these cases simply restate the
commonplace idea that medical opinions are entitled to careful consideration when

making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064.  Once

this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.   20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999).

C.     **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

This case arose after a fundamental paradigm shift in the evaluation of medical opinion evidence in Social Security appeals. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March 0f 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or

she] find[s] all of the medical opinions." <u>Id</u>. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. <u>Revisions to Rules</u>, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. <u>Id</u>. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). <u>Id</u>. at §§ 404.1520c(b)(3), 416.920c(b)(3).

<u>Andrew G. v. Comm'r of Soc. Sec.</u>, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well-

17

established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

It is against these legal benchmarks that we assess the instant appeal.

**D.**    **The ALJ's Decision in this Case is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Ward was not disabled. Therefore, we will affirm this decision.

At the outset, we note that Ward raises a procedural concern, alleging that the ALJ's refusal to permit a telephonic hearing was error that compels a remand of this case. We disagree. On this score we note that it has long been held that "the conduct of the [Social Security] hearing rests generally in the [ALJ]'s discretion." Richardson v. Perales, 402 U.S. 389, 400 (1971). This broad discretion extends to decisions to grant, or deny, requests for telephonic testimony; however, the regulations express a preference for in-person or video appearances by claimants.

19

Thus, the regulations governing the conduct of these hearings provide as a general rule that claimants will appear "either by video teleconferencing or in person." 20 C.F.R. § 416.1436(c). Further, these regulations state that an ALJ "will schedule [a claimant] or any other party to the hearing to appear by telephone when we find an appearance by video teleconferencing or in person is not possible *or other extraordinary circumstances prevent you from appearing by video teleconferencing or in person.*" 20 C.F.R. § 416.14369 (c)(2) (emphasis added). Thus, the regulations contemplate excusing a claimant from an in-person hearing only upon a showing of extraordinary circumstances. Indeed, these regulations allow an ALJ to insist upon live, in-person testimony even if all parties agree to waive their appearances "if the administrative law judge believes that a personal appearance and testimony by . . . any . . . party is necessary to decide the case." 20 C.F.R. § 416.1450(b).

Given this stated preference for in-person hearings, it cannot be said that the ALJ abused his discretion when he denied Ward's request for a telephonic hearing. The manner in which Ward had framed her claims made her credibility a crucial issue in this appeal, since there was a striking disparity between her claims of complete disability due to agoraphobia and her work history and activities of daily living. Given this disparity, the ALJ was justified in seeking a live appearance by

Ward, in accordance with the regulations governing the conduct of these hearings, in order to more fully assess her credibility. As the ALJ observed:

> Claimant's representative requested the claimant appear at the hearing by telephone, arguing the claimant "suffers from extreme agoraphobia and has an extreme fear of traveling" (13E/1-2). The claimant's representative insists the claimant "cannot go to new places that are outside of her comfort zone" (13E/1) and "was only able to drive … 15 minutes from her residence" (13E/2). At the hearing, the claimant's representative objected to not allowing the claimant appear at the hearing telephonically (Hearing Testimony). Near the date of the hearing a July 2019 treatment note states the claimant "has been leaving her house daily and has been [g]oing to different dollar stores and department stores" (13E/9; 8F/7), and implies she has been working as she would go somewhere "after her work shift" (13E/9; 8F/7). A subsequent July 2019 progress note indicates the claimant went to a fast food restaurant with her daughter and "left not because of high anxiety but the air conditioning was not working, and they were uncomfortable" (13E/7; 8F/5). These treatment notes near the date of the hearing indicate the claimant has the capacity to travel places.

(Tr. 15).

This decision was consistent with the regulations governing the conduct of disability hearings, fell well within the ALJ's broad discretion, and was justified given the credibility issues raised by Ward's claim of disability, which stood in contrast to some of her other activities of daily living. Therefore, this discretionary decision by the ALJ to require Ward to appear at this hearing does not give rise to grounds for a remand in this case.

Likewise, Wards errs when she contends that the ALJ failed to adequately consider the disabling effect of her depression, anxiety, and panic disorders. In our view, this contention fails for several reasons.

First, Ward's argument ignores basic, longstanding legal tenets governing judicial review of ALJ evaluation of medical opinion evidence. The question of disability is a legal determination and is not wholly dictated by medical opinions. Thus, "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Further, in making this assessment of medical opinion evidence: "An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion." Durden, 191 F.Supp.3d at 455. Finally, when there is no evidence of any credible medical opinion supporting a claimant's allegations of disability, it is also well settled that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129F. Supp.3d at 214–15.

Second, Ward's argument fails to consider a stark truth. The evidence Ward presented at this hearing was entirely devoid of any medical opinion supporting her claim of disability. Instead, there was significant countervailing opinion and clinical evidence which clearly indicated that the plaintiff could perform some work. In this setting, where the plaintiff has failed before the ALJ to support her claim of disability

with any competent medical opinion evidence, courts have routinely rebuffed arguments that the ALJ erred in rejecting what was a factually unsupported claim of total disability. See e.g., Naomi Rodriguez v. Berryhill, No. 1:18-CV-684, 2019 WL 2296582, at *1 (M.D. Pa. May 30, 2019); Woodman v. Berryhill, No. 3:17-CV-151, 2018 WL 1056401, at *1 (M.D. Pa. Jan. 30, 2018), report and recommendation adopted, No. 3:17-CV-151, 2018 WL 1050078 (M.D. Pa. Feb. 26, 2018); Patton v. Berryhill, No. 3:16-CV-2533, 2017 WL 4875286, at *1 (M.D. Pa. Oct. 12, 2017), report and recommendation adopted in part, No. 3:16-CV-2533, 2017 WL 4867396 (M.D. Pa. Oct. 27, 2017).

In any event, it is apparent that the ALJ's decision in this case faithfully applied the current medical opinion evaluation regulations. The ALJ carefully examined the sparse medical opinion evidence, evaluated its consistency with the clinical record and its persuasiveness, and concluded that the sole medical opinion in this case, which found that Ward was not disabled, was persuasive. There simply was no error here.

Finally, we conclude that a remand is not required in the case due to any alleged Step 2 error by the ALJ in considering the severity of Ward's agoraphobia. Our consideration of this claim is guided by familiar legal principles. Initially:

> At step-two of the sequential analysis, the ALJ determines whether a
> claimant has a medically severe impairment or combination of

impairments. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities. <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a de minimis screening device used to cast out meritless claims. <u>McCrea</u>, 370 F.3d at 360; <u>Newell v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. <u>Bowen</u>, 482 U.S. at 146, 107 S.Ct. 2287.

<u>Stancavage v. Saul</u>, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

Further:

[I]t is well-settled that: "[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." <u>Naomi Rodriguez v. Berryhill</u>, No. 1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019)(citing cases).

<u>Id.</u> at 332.

While the ALJ did not mention agoraphobia as a severe impairment at Step 2, the ALJ discussed Ward's agoraphobia when formulating the RFC for Ward. (Tr. 20-21). Furthermore, it is apparent that the ALJ expressly considered this condition in formulating the RFC in this case since that RFC provided that: "She cannot interact with the public." (Tr. 20). Therefore, to the degree that the ALJ's Step 2 consideration of this condition was arguably insufficient, this alleged error was

24

harmless given the ALJ's continued examination of Ward's agoraphobia throughout the sequential decision-making process. <u>Stancavage</u>, 469 F.Supp.3d at 332.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

### III.   **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATE: September 20, 2021

26